**HAEMONETICS CORP., Plaintiff,**

v.

**BAXTER HEALTHCARE CORP. and Fenwal, Inc., Defendants.**

**Civil Action No. 05–12572–NMG.**

United States District Court,
D. Massachusetts.

Sept. 16, 2008.

Frank J. Bailey, Margaret H. Paget, Sherin & Lodgen, Martin J. O'Donnell, Cesari & McKenna, LLP, Boston, MA, for Haemonetics Corp.

William H. Baumgartner, Jon M. Spanbauer, Sidley Austin LLP, Marlee Jansen, Chicago, IL, Scott B. Familant, David T. Pritikin, Sidley Austin LLP, New York, NY, Nathan C. Henderson, Donald R. Ware, Foley Hoag LLP, Boston, MA, Justin J. Daniels, Skadden, Arps, Slate, Meagher & Flom LLP, Robert J. Muldoon, Jr., Sherin & Lodgen LLP, Boston, MA, Daniel A. DeVito, James L. Leonard, Jr., Douglas R. Nemec, P. Anthony Sammi, Skadden, Arps, Slate, Meagher & Flom LLP, New York, NY, for Defendants.

## MEMORANDUM & ORDER

GORTON, District Judge.

The defendant in a patent infringement action moves for summary judgment of non-infringement.

## I. *Background*

The Plaintiff, Haemonetics Corp. ("Haemonetics"), alleges that Baxter Healthcare Corp. ("Baxter") has infringed and continues to infringe, directly, contributorily and/or by inducement, United States Patent No. 6,705,983 (hereinafter referred to as "the '983 patent"), a patent owned by Haemonetics. The '983 patent claims a centrifugal device used for separating and collecting components in a liquid such as blood. Haemonetics asserts that in or around 2003, Baxter began offering and selling a blood component collection system known as the Alyx System, which includes a centrifugal device, and that that the Alyx System infringes the '983 patent.

On March 27, 2007, the parties entered an assented to motion for joinder of Fenwal Inc. ("Fenwal") as a defendant in the action. Fenwal is an independent corporation formed upon Baxter's complete divestiture of its transfusion therapies business, which includes the allegedly infringing device.

The parties appeared before this Court for a Markman hearing on July 24, 2007, and this Court construed the '983 Patent in a Memorandum and Order entered on August 16, 2007, 517 F.Supp.2d 514. That Order construed the '983 Patent to include, as separate elements:

1) *First Drive Units* means the assemblage of components responsible for rotating the tubes at an angular rate of ω and does not include the tubes or vessel.

2) *Second Drive Units* means the assemblage of components responsible for rotating the centrifugal vessel (or centrifugal unit) at an angular rate of 2ω and does not include the tubes or vessel.

Fenwal moves for partial summary judgment on the grounds that the Alyx system cannot infringe the '983 patent because it does not include a separate "second drive unit". Although the centrifugal vessel of the Alyx system rotates at an angular rate of 2ω (i.e., twice the rate at which the tubes rotate), Fenwal alleges that it achieves that result in a completely differ-

ent way from that taught by the '983 patent. Haemonetics counters that the accused device infringes the '983 patent under the doctrine of equivalents which Fenwal also denies.

## II. *Analysis*

### A. Legal Standards

#### 1. Summary Judgment Standard

The role of summary judgment is "to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Mesnick v. General Elec. Co.,* 950 F.2d 816, 822 (1st Cir.1991)(quoting *Garside v. Osco Drug, Inc.,* 895 F.2d 46, 50 (1st Cir.1990)). The burden is upon the moving party to show, based upon the pleadings, discovery and affidavits, "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c).

A fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). "Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* A genuine issue of material fact exists where the evidence with respect to the material fact in dispute "is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

Once the moving party has satisfied its burden, the burden shifts to the non-moving party to set forth specific facts showing that there is a genuine, triable issue. *Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The Court must view the entire record in the light most hospitable to the non-moving party and indulge all reasonable inferences in that party's favor. *O'Connor v. Steeves,* 994 F.2d 905, 907 (1st Cir.1993). If, after viewing the record in the non-moving party's favor, the Court determines that no genuine issue of material

fact exists and the moving party is entitled to judgment as a matter of law, summary judgment is appropriate.

#### 2. Infringement Standard

A claim of patent infringement requires a two step analysis. First, the court must construe the asserted claim, as this Court did in its Memorandum and Order entered on August 16, 2007 ("the Markman order"). *RF Del. Inc. v. Pac. Keystone Techs., Inc.,* 326 F.3d 1255, 1266 (Fed.Cir.2003). That construction is rendered as a matter of law. Second, it "must determine whether the accused product or process contains each limitation" of the claims, "either literally or by a substantial equivalent". *Id.* The determination of whether all limitations are present is a question of fact, governed by the summary judgment standard discussed above.

#### 3. The Doctrine of Equivalents

The doctrine of equivalents provides that

a product or process that does not literally infringe upon the express terms of a patent claim may nonetheless be found to infringe if there is "equivalence" between the elements of the accused product or process and the claimed elements of the patented invention.

*Warner–Jenkinson Co. v. Hilton Davis Chem. Co.,* 520 U.S. 17, 21, 117 S.Ct. 1040, 137 L.Ed.2d 146 (1997), citing *Graver Tank & Mfg. Co. v. Linde Air Products Co.,* 339 U.S. 605, 70 S.Ct. 854, 94 L.Ed. 1097 (1950). It recognizes that if a patent could be contravened by the alteration of an insignificant detail it would offer no meaningful protection at all. *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.,* 535 U.S. 722, 731, 122 S.Ct. 1831, 152 L.Ed.2d 944 (2002).

That doctrine is, of course, in tension with the public-notice and definitional

functions of patent claims and risks deterring non-infringing innovation as well as infringing behavior. *See id.* at 727, 122 S.Ct. 1831. In order to alleviate that tension, the doctrine of equivalents is bounded by several complementary rules of law. The "all limitations" rule, which requires that equivalence be assessed on a limitation by limitation basis, *Freedman Seating Co. v. American Seating Co.,* 420 F.3d 1350, 1358 (Fed.Cir.2005), is of particular relevance to the present inquiry. Also pertinent is the rule against vitiation, which precludes a finding of equivalence if such a finding would entirely vitiate the subject limitation. *Id.*

■ To determine, with respect to a given claim limitation, whether it would or would not be vitiated by a finding of equivalence, the Court must ask whether the difference between the element of the accused product and the corresponding limitation of the claim in the patented invention is a "subtle difference in degree" or a "clear, substantial difference in kind". *Id.* at 1361, quoting *Ethicon Endo–Surgery, Inc. v. U.S. Surgical Corp.,* 149 F.3d 1309, 1321 (Fed.Cir.1998).

## B. Application

■ The only disputed limitation in our case is the second drive element, which "rotat[es] the centrifugal vessel (or centrifugal unit) at an angular rate of 2ω and does not include the tubes or vessel". The plaintiff does not allege that the accused device literally contains that limitation, as indeed it cannot in light of the fact that the alleged second drive element of the accused device includes the tubes, which are explicitly excluded from the second drive element of the patented device. It urges, however, that the doctrine of equivalents precludes the entry of summary judgment of non-infringement.

Both devices make use of the so-called ω:2ω ratio by which a tube curved into the shape of a question mark and rotated from the "bottom" end causes a vessel attached to the "top" end to attain twice the rotational speed imparted to the "bottom" of the tube. That ratio of speeds permits a tighter seal between the vessel and the tubing, through which separated materials are introduced and removed, than is otherwise possible. The plaintiff concedes that the ω:2ω ratio has been previously used in various applications, including blood processing. The '983 patent improved on previous devices by introducing a particularly small, disposable centrifugal vessel which was designed to reduce the stress on its component parts.

The '983 patent describes a separate set of components to cause the vessel to rotate at a speed of 2ω distinct from (although overlapping with) the assemblage of components used to rotate the tubes at a speed of ω and, crucially, not including the tubes themselves.

### 1. The Device

A comparison of the patent claims and the accused device is instructive. In the '983 patent, the first drive unit consists, in essence, of 1) a rotating shaft driven by 2) a motor and 3) an upper and a lower tray which are driven by the rotating shaft. The second drive unit shares several components in common with the "1ω" drive train, namely the motor, the rotating shaft and the upper tray. It also includes a set of gears and a connected belt and disk which transfer the rotation of the shaft, at a rate of 1ω, into the rotation of the vessel at 2ω. Those separate components have the effect of applying torque to the vessel separate from that which would be independently imparted by the tube and this Court has construed such components to be excluded from both drive units.

In the accused device, by contrast, the first drive unit consists of 1) a motor and 2) a yoke, to which the rotating tube is

mounted. The second drive unit, as described by the plaintiff (the existence of which the defendant flatly denies), is simply the first drive unit plus the tube itself. Through the $\omega{:}2\omega$ ratio, the tube transfers the rotation of the yoke at an angular rate of $\omega$ into a rotation of the vessel at the rate of $2\omega$. The tube is connected to the vessel which rotates without unacceptable torsion accumulation by virtue of its connection to a freely floating plate.

## 2. Analysis

The mechanism which causes the vessel in the Alyx system to rotate at a rate of $2\omega$ can be viewed in one of two ways. The first is that the motor and the yoke are solely responsible for rotating both the tube (at a rate of $\omega$) and the vessel (at a rate of $2\omega$). That is the view urged by Fenwal which denies that its device includes a second drive unit at all. If the jury were to conclude that that is the manner in which the Alyx system operates, it could not find infringement through the doctrine of equivalents because it would have concluded that the accused device had no corresponding element to the '983 patent's second drive unit. Such a finding would read the "second drive unit" claim out of the patent entirely. Under that interpretation, therefore, no genuine issue of material fact remains with respect to Haemonetics's allegation of patent infringement.

The defendant's argument is persuasive but because the Court is addressing a motion for summary judgment it is compelled to view the facts in the light most favorable to the nonmoving party. A jury could find that, although the second drive unit described in the patent explicitly does not include the tube, the corresponding second drive unit in the accused device differs in that it does include the tube. Under those circumstances the Alyx system would be found to feature a second drive unit distinct from its first drive unit.

That element includes the motor and the yoke as well as the tube. Because the inclusion of the tube precludes a finding of literal infringement, the Court must inquire whether the doctrine of equivalents permits a reasonable jury to find infringement.

The fact that the asserted second drive unit of the Alyx device includes the tube, which is excluded from the corresponding element of the '983 patent, does not, of course, answer the question. If any difference at all between the accused device and the patent as construed by the Court precludes a finding of infringement, the doctrine of equivalents is a nullity. The Court must determine whether the second drive unit (which includes the tube) is differentiated from the '983 patent (which does not) by a "subtle difference in degree" or a "clear, substantial difference in kind". *Freedman Seating*, 420 F.3d at 1361.

Courts applying the doctrine of equivalents have often employed the "function-way-result" test, asking whether the allegedly infringing product performs substantially the same function, in substantially the same way, to achieve substantially the same result as the patented device. *See Warner–Jenkinson*, 520 U.S. at 38, 117 S.Ct. 1040. In the present case, there can be little doubt that the function and the result of the two products are identical: each causes the centrifugal vessel to rotate at twice the rate of its attached tubing.

The "way" element of the "function-way-result" test is more problematic. The plaintiff's memorandum in opposition to the motion for summary judgment reasserts its disagreement with this Court's construction of the patent, contesting in particular the limitation that the second drive unit "does not include the tubes". On the basis of that disagreement, it asserts that both the claim and the accused device apply torque to the centrifugal ves-

sel through the tubes and that the only difference between them is that, while the patent claim *also* applies torque through a separate mechanism of gears and belts, the Alyx device applies torque *only* through the tube.

Notwithstanding the plaintiff's evident dissatisfaction with this Court's Markman order, the patent has been construed such that the claimed "second drive unit" causes the centrifugal vessel to rotate at a rate of 2ω through "an assemblage of components [which] does not include the tubes". The accused device causes the centrifugal vessel to rotate at a rate of 2ω exclusively through the tube. No reasonable jury could find that the claim and the accused device achieve that result in "substantially similar" ways. All of the components included in the second drive unit but not in the first drive unit as claimed by the patent (i.e., the gears, belt and disk) exist for the sole purpose of transmitting torque through channels other than the tube itself. That entire assemblage, which comprises all of the characteristics separating the second drive unit from the first, would be deemed superfluous by such a finding. That outcome would be strikingly inconsistent with this Court's Markman order.

Because the device contemplated by the patent claim and the Alyx device perform their functions in substantially different ways, they are separated by a "substantial difference in kind" rather than a "subtle difference in degree". Therefore, the doctrine of equivalents cannot support a finding of patent infringement. *Freedman Seating*, 420 F.3d at 1361.

### ORDER

In accordance with the foregoing, the defendant's motion for partial summary judgment of non-infringement (Docket No. 54) is **ALLOWED**.

So ordered.