HAEMONETICS CORP., Plaintiff,

v.

BAXTER HEALTHCARE CORP. and Fenwal, Inc., Defendants.

Civil Action No. 05–12572–NMG.

United States District Court, D. Massachusetts.

Jan. 5, 2009.

Frank J. Bailey, Katy Ellen Koski, James W. Matthews, Sherin and Lodgen LLP, Martin J. O'Donnell, Cesari & McKenna, LLP, Boston, MA, for Plaintiff.

William H. Baumgartner, Jon M. Spanbauer, Sidley Austin LLP, Marlee Jansen, Chicago, IL, Rachel Blitzer, Stacey Cohen, Daniel A. DeVito, Edward V. Filardi, James L. Leonard, Jr., Douglas R. Nemec, P. Anthony Sammi, Skadden, Arps, Slate, Meagher & Flom LLP, Scott B. Familant, David T. Pritikin, Sidley Austin LLP, New York, NY, Justin J. Daniels, Thomas J. Dougherty, Skadden, Arps, Slate, Meagher & Flom LLP, Boston, MA, Nathan C. Henderson, Foley Hoag LLP, West Boston, MA, for Defendants.

Robert J. Muldoon, Jr., Margaret H. Paget, Sherin & Lodgen, Boston, MA, for Counter Defendant.

Donald R. Ware, Foley Hoag LLP, Boston, MA, for Counter Claimant.

## MEMORANDUM & ORDER

GORTON, District Judge.

In this patent infringement action, several discovery-related motions have been filed and will be resolved as set forth below.

### I. *Background*

On December 22, 2005, plaintiff Haemonetics Corp. ("Haemonetics") filed a complaint alleging that Baxter Healthcare Corp. ("Baxter") has infringed and continues to infringe, directly, contributorily and/or by inducement, United States Patent No. 6,705,983 (hereinafter referred to as "the '983 patent"), a patent owned by Haemonetics. The '983 patent claims a centrifugal device used for separating and collecting components of liquids such as blood. Haemonetics asserts that in or around 2003, Baxter began offering and selling a blood component collection system known as the Alyx System, which includes a centrifugal device.

In March, 2007, a newly-formed, independent corporation, TPG Capital, L.P. ("TPG"), acquired from Baxter its transfusion therapies business, including the allegedly infringing system. Apparently, Fenwal Inc. ("Fenwal") was later incorporated by TPG as its wholly-owned subsidiary to operate that business. The parties, therefore, assented to the joinder of Fenwal as a party-defendant in the action in July, 2007. On September 16, 2008, 577 F.Supp.2d 482 (D.Mass.2008), this Court allowed Fenwal's motion for partial summary judgment of non-infringement of certain claims of the patent-in-suit, leaving other claims in dispute.

Trial with respect to the remaining claims, after having been postponed twice, is currently scheduled to commence on Tuesday, January 20, 2009. Even with trial rapidly approaching, however, the parties remain embroiled in discovery disputes.

The first dispute arises out of certain documents produced by TPG, the parent company of Fenwal, in response to Haemonetics' subpoena duces tecum issued in May, 2008, by the United States District Court for the Northern District of Texas. The subpoena required TPG to produce, *inter alia*, documents pertaining to the Alyx System and TPG's due diligence prior to acquiring Fenwal from Baxter. Haemonetics alleges that such information pertains to Fenwal's liability for infringement (through the defendants' knowledge of the '983 patent) and to the measure of damages due from Fenwal. In response to the subpoena, TPG produced a few documents but objected to the production of most of the documents requested and filed a motion to quash. Upon order of the Texas court, TPG and Haemonetics conferred on several occasions and ultimately agreed that TPG would produce relevant documents so long as TPG was permitted to designate them "For Outside Counsel Eyes Only" ("FOCO"). The parties also agreed that they would, in all other respects, be governed by the protective order issued by this Court in November, 2006 ("the 2006 protective order"), concerning the handling of "confidential information". Accordingly, TPG withdrew its motion to quash and produced the documents with the FOCO designation.

After reviewing the subject documents, however, Haemonetics informed TPG that it needed to share them with in-house counsel and expert witnesses and, thus, sought to have the FOCO designation removed. TPG refused to "de-designate" any of its documents except for two of them which are publicly available. It also refused to re-designate the documents as "confidential information" subject to the 2006 protective order. Haemonetics coun-

tered by filing a motion to compel TPG to remove the FOCO designation from all of the documents it produced, in response to which TPG moved for a protective order to maintain the designation of those documents as FOCO. The cross-motions are now pending before the Court.

The second discovery dispute arises out of the report of Haemonetics' expert, George A. Russell, Ph.D. ("Dr. Russell"), with respect to the dates of priority for the patent-in-suit. During discovery, which closed in June, 2008, the defendants repeatedly requested that Haemonetics provide them with the date of 1) the conception of the '983 patent's centrifugal device and 2) the reduction to practice of that invention. Haemonetics failed to provide that information, stating that it was believed to be known only to the inventor of the '983 patent, Jean–Denis Rochat ("Rochat"). The defendants attempted to contact Rochat and to obtain relevant documents from him but had difficulty doing so because he apparently resides in Switzerland. In the absence of the precise dates of priority for the '983 patent, the defendants proceeded under the assumption that the earliest possible priority date was the date of the filing of the application that ultimately issued as the '983 patent, i.e., April 9, 1999.

Rochat, however, allegedly sent certain documents to Haemonetics in mid-September, 2008, copies of which Haemonetics promptly produced for the defendants. Based on those documents, Dr. Russell produced an expert report on behalf of Haemonetics which asserted, for the first time, that the dates of conception and reduction to practice were April 20, 1998, and April 9, 1999, respectively. That report was produced for the defendants on September 22, 2008. Fenwal now moves the Court to strike Dr. Russell's report because it is based on information that surfaced after the close of discovery. Haemonetics opposes that motion.

## II. *Legal Analysis*

### A. Motion to Compel and Cross–Motion for a Protective Order

#### 1. Legal Standard

■ The Court may, for good cause shown, order discovery of any matter relevant to the subject matter involved in a pending lawsuit. Fed.R.Civ.P. 26(b)(1). Conversely, also for good cause shown, the Court may enter a protective order to prohibit or limit discovery from any person from whom discovery is sought. Fed. R.Civ.P. 26(c). The burden of demonstrating good cause rests on the proponent of the protective order. *Public Citizen v. Liggett Group, Inc.,* 858 F.2d 775, 789 (1st Cir.1988).

Relying upon *Zenith Radio Corp. v. Matsushita Elec. Indus. Co.,* 529 F.Supp. 866 (E.D.Pa.1981), TPG argues that it should not be compelled to re-designate all of its subpoenaed documents. Such reliance is, however, misplaced because that case addressed "wholesale" de-classification, not *re*-classification. *Id.* at 893.

#### 2. Application

■ There is no good cause to prohibit the re-designation of TPG's documents as "confidential information" subject to the 2006 protective order. TPG claims that it would have pursued its motion to quash in the Texas court if it had known that it would have to disclose the subpoenaed documents subject only to the protective order and not to the FOCO designation. The Court concludes that what TPG bargained for was the opportunity to defend its more restrictive designation of the subject documents under the provisions of the existing protective order and not that it was entitled to an uncontested FOCO designation.

TPG also argues that the information contained in the subpoenaed documents is highly sensitive because it relates to such things as TPG's business methods, strategy, marketing plans and long-term forecasts. It, therefore, contends that there is a "real risk of further dissemination (even if inadvertent)". Such a concern appears to be over-blown because Haemonetics merely seeks re-classification of TPG's documents to "confidential" as defined under the 2006 protective order. That protective order already guarantees that "confidential" information will be disclosed only to specific persons connected to this lawsuit and to be used only in connection with this lawsuit.

Indeed, by its own terms, the 2006 protective order is specifically designed to protect "trade secrets and other confidential research, development, or commercial information". TPG has failed to proffer any reason why 1) the 2006 protective order is insufficient, 2) that order would be violated or 3) the Court should anticipate that the documents will fall into the wrong hands or be misused. Therefore, the risk of injurious dissemination, which TPG fears, is unsubstantiated.

■ Furthermore, the Court agree with Haemonetics that there is good cause to re-designate TPG's documents as "confidential" rather than FOCO. Re-designation is warranted to permit Haemonetics' in-house counsel and expert witnesses to have access to documents which are arguably crucial to Haemonetics' case in chief. Haemonetics explains that it needs access to the documents to prove damages because they purportedly represent TPG's view of the market for automated red blood cell collection systems and are thus probative of the reasonable royalties and lost profits to which Haemonetics may be entitled.

Therefore, Haemonetics' motion to compel re-designation will be allowed and TPG's motion for a protective order will be denied.

## B. Motion to Strike

■ Fenwal seeks to strike the expert report of Dr. Russell because it is based on priority dates that only recently were disclosed. Fenwal argues that it, along with co-defendant Baxter, has been preparing its defense ever since Haemonetics filed suit in 2005, and in particular, with respect to patent invalidity due to prior invention under 35 U.S.C. § 102(g)(2) and obviousness under 35 U.S.C. § 103. In that regard, Fenwal has assumed that the earliest possible priority date was April 9, 1999, the date of the filing of the application that ultimately issued as the '983 patent and, accordingly, has examined documents immediately before that date for evidence of prior invention and prior art, from which its expert reports were created.

Haemonetics responds that it was never informed that Fenwal planned to use April 9, 1999, as the date of priority. In fact, it alleges that early in discovery it produced some documents that came from Rochat dated as early as 1998 (before the filing of the application for what ultimately became the '983 patent). It also argues that Fenwal will suffer no prejudice from the allegedly late production of Dr. Russell's report because neither side has taken expert depositions as of yet.

■ Haemonetics' argument is persuasive. It is unrealistic for a party not to expect its strategy to change over the course of litigation. Although the tardy production of relevant material is problematic, the appropriate remedy, particularly where there is no convincing evidence that the producing party is blameworthy, is not to preclude the use of such material altogether. Rather, it is to provide the

receiving party with the wherewithal to respond to such evidence and to develop countervailing evidence of its own. The Court will adopt the latter approach and, therefore, the motion to strike will be denied.

## ORDER

In accordance with the foregoing, Haemonetics' motion to compel (Docket No. 73) is **ALLOWED,** TPG's motion for a protective order (Docket No. 77) is **DE-NIED,** and Fenwal's motion to strike (Docket No. 84) is **DENIED.** New dates with respect to any necessary remaining discovery from expert witnesses will be established at the pre-trial conference on Thursday, January 8, 2009.

**So ordered.**