**HAEMONETICS CORP., Plaintiff,**

v.

**BAXTER HEALTHCARE CORP. and Fenwal, Inc., Defendants.**

**Civil Action No. 05–12572–NMG.**

United States District Court, D. Massachusetts.

Jan. 7, 2009.

Frank J. Bailey, Katy Ellen Koski, James W. Matthews, Sherin and Lodgen LLP, Martin J. O'Donnell, Cesari & McKenna, LLP, Boston, MA, for Plaintiff.

Marlee Jansen, William H. Baumgartner, Jon M. Spanbauer, Sidley Austin LLP, Chicago, IL, Rachel Blitzer, Stacey Cohen, Justin J. Daniels, Daniel A. DeVito, Thomas J. Dougherty, Edward V. Filardi, James L. Leonard, Jr., Douglas R. Nemec, P. Anthony Sammi, Skadden, Arps, Slate, Meagher & Flom Inc., Scott B. Familant, David T. Pritikin, Sidley Austin LLP, New York, NY, for Defendants.

## MEMORANDUM & ORDER

GORTON, District Judge.

In this patent infringement action, defendant Fenwal Inc. ("Fenwal") has moved to exclude the report and testimony of the expert of plaintiff Haemonetics Corp. ("Haemonetics"), Creighton Hoffman ("Hoffman"), with respect to his analysis of lost profit damages. The background of this case has been described several times in earlier memoranda of this Court, most recently in its Memorandum and Order entered on January 5, 2009, 593 F.Supp.2d 298, 2009 WL 117417 (Docket No. 122) which is incorporated herein by reference.

### A. Legal Standard

■ Pursuant to 35 U.S.C. § 284, recovery of damages for patent infringement should be "adequate to compensate for the

infringement". To obtain an award for lost profits as a result of patent infringement, a patentee must prove the four so-called *"Panduit"* factors: 1) demand for the patented product, 2) absence of acceptable, non-infringing substitutes, 3) its own manufacturing and marketing capability to exploit the demand and 4) the amount of the profit it would have made but for the infringement. *Bose Corp. v. JBL, Inc.,* 112 F.Supp.2d 138, 159 (D.Mass.2000), *aff'd,* 274 F.3d 1354 (Fed.Cir.2001), citing *Panduit Corp. v. Stahlin Bros. Fibre Works, Inc.,* 575 F.2d 1152, 1156 (6th Cir.1978).

 The testimony of an expert who testifies on matters such as lost profits must be based on valid principles and methods that are reliably applied to the facts in issue and which will assist the trier of fact. Fed.R.Evid. 702; *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579, 592–93, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993). Hence, expert testimony must be something more than "speculative belief or unsupported speculation". *Daubert,* 509 U.S. at 590, 113 S.Ct. 2786. An expert may, however, base his testimony on personal experience so long as he or she "employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field". *Kumho Tire Co., Ltd. v. Carmichael,* 526 U.S. 137, 152, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999). So long as expert testimony is derived from the scientific method,

> it should be tested by the adversary process—competing expert testimony and active cross-examination—rather than excluded from jurors' scrutiny for fear that they will not grasp its complexities or satisfactorily weigh its inadequacies.

*Ruiz–Troche v. Pepsi Cola of P.R. Bottling Co.,* 161 F.3d 77, 85 (1st Cir.1998).

In addition to meeting the *Daubert* standard, expert testimony must satisfy the general requirements of Fed.R.Evid. 403 that its probative value is not substantially outweighed by the danger of unfair prejudice, confusion of the issues or misleading the jury.

**B. Application**

In its motion, Fenwal argues that Hoffman has failed to satisfy the first and fourth *Panduit* factors and that his expert report and testimony as to lost profits are, therefore, inadmissible.

 With respect to the first factor, Fenwal argues that Hoffman has failed to prove demand for the centrifugal device claimed by the '983 patent because 1) he relies on sales of other Haemonetics' products not covered by the '983 patent and 2) he concedes that sales of Fenwal's allegedly infringing device were driven by its portability and efficiency, neither of which feature is claimed in the '983 patent. Haemonetics responds persuasively that no case law suggests that Hoffman's method for calculating demand is improper. Indeed, to the contrary, case law suggests that a patented invention must only "contribute[ ] substantially" to consumer demand and that other factors may be used to demonstrate demand. *Bose Corp.,* 112 F.Supp.2d at 159–60. Furthermore, as Haemonetics notes, Hoffman relied on a plethora of material beyond what Fenwal describes. Hoffman's testimony therefore satisfies the first *Panduit* factor.

 With respect to the fourth factor, Fenwal contends that Hoffman has failed to provide a rigorous scientific analysis of what proportion of infringing sales would have gone to Haemonetics. In support of that contention, Fenwal points to Hoffman's conclusion that Haemonetics would have captured 90% of Fenwal's infringing sales.

In his deposition testimony, Hoffman explained that he came up with that percentage by starting with the assumption that, where a patent owner and a patent infringer are the only suppliers in a market, the capture rate should be 100% as set forth in *State Indus., Inc. v. Mor–Flo Indus., Inc.*, 883 F.2d 1573, 1578 (Fed.Cir.1989) (stating that it is reasonable to assume that a similarly-situated patent owner would have made all of the infringer's sales). Next, "to be conservative", he reduced it to 90% after taking into account his "experience" that there are always at least some customers of the patent infringer who would have been unwilling to buy from the patentee for reasons completely unrelated to the product itself.

Such methodology is not pure speculation. If, as Fenwal contends, the evidence supports a greater (or smaller) deviation from a 100%-capture rate, the defendants may produce such evidence at trial. Moreover, they remain free to challenge Hoffman's calculations on cross-examination. Hoffman's testimony will not, therefore, be limited pursuant to the fourth *Panduit* factor.

 Next, Fenwal claims that Hoffman's testimony fails to meet the standard set forth in Fed.R.Evid. 403 because of the likelihood of confusing the jury with respect to lost profits. It fears that the jury's damage award may be artificially inflated by Hoffman's "unsubstantiated" 90%-capture rate. Fenwal's fear is unfounded because Hoffman's capture rate may help the jury determine lost profits and, in any event, perceived flaws in his reasoning or calculations may be challenged through the normal adversary process. Therefore, the probative value of Hoffman's report and testimony outweigh any potential prejudice that may result.

Finally, the parties dispute certain *Daubert* limitations imposed on Hoffman's

methodology in past lawsuits. The discussion of what Fenwal describes as Hoffman's "questionable track record" is irrelevant to the issue currently before this Court which is distinguishable from those present in the other cases.

### ORDER

In accordance with the foregoing, Fenwal's motion to limit the report and testimony of Haemonetics' expert, Creighton Hoffman, (Docket No. 99) is **DENIED.** **So ordered.**