SciGrip, Inc. v. Osae, 2015 NCBC 86.

| | |
|---|---|
| STATE OF NORTH CAROLINA<br><br>DURHAM COUNTY | IN THE GENERAL COURT OF JUSTICE<br>SUPERIOR COURT DIVISION<br>13 CVS 2854 |
| SCIGRIP, INC. f/k/a IPS STRUCTURAL ADHESIVES HOLDINGS, INC. and IPS INTERMEDIATE HOLDINGS CORPORATION,<br><br>        Plaintiffs,<br><br>v.<br><br>SAMUEL B. OSAE and SCOTT BADER, INC.,<br><br>        Defendants. | **ORDER & OPINION ON PLAINTIFFS' RENEWED MOTION TO COMPEL DISCOVERY RESPONSES FROM DEFENDANT SAMUEL B. OSAE** |

{1}    **THIS MATTER** is before the Court upon (1) Plaintiffs SciGrip, Inc. f/k/a IPS Structural Adhesives Holdings, Inc. and IPS Intermediate Holdings Corporation's (collectively, "IPS" or "Plaintiffs") Renewed Motion to Compel Discovery Responses from Defendant Samuel B. Osae ("Defendant" or "Mr. Osae") (the "Motion" or "Motion to Compel") and (2) Mr. Osae's request to view Plaintiffs' Supplemental Responses to discovery requests, invited by the Court's July 13, 2015 Scheduling Order, in the above-captioned case. As explained below, the Court **DENIES** Plaintiffs' Motion to Compel without prejudice to Plaintiffs' right to renew its Motion for good cause shown, and **DENIES** Defendant's request to view Plaintiffs' Supplemental Responses to discovery requests ("Supplemental Responses") without prejudice to Mr. Osae's right to renew his request for good cause shown.

*Lynch, Cox, Gilman & Goodman, P.S.C., by Donald L. Cox and William H. Mooney, and Law Offices of Denise Smith Cline, PLLC, by Denise Smith Cline, for Plaintiffs SciGrip, Inc. and IPS Intermediate Holdings Corp.*

*Mast, Schulz, Mast, Johnson, Wells, & Trimyer, P.A., by George B. Mast and Lily Van Patten, for Defendant Samuel B. Osae.*

*Ogletree, Deakins, Nash, Smoak & Stewart, P.C., by Patrick Lawler and Phillip J. Strach, for Defendant Scott Bader, Inc.*

Bledsoe, Judge.

# I.

## PROCEDURAL BACKGROUND

{2} Plaintiffs develop and produce "acrylic-based structural adhesives that are used in the marine and other industries to bond fiberglass and other material together." (Am. Compl. ¶ 7.) Plaintiffs initially brought suit against Mr. Osae, a former employee, and Defendant Scott Bader, Inc. in 2008 to enforce the employment agreement between Plaintiffs and Mr. Osae and to protect their proprietary information. (Am. Compl. ¶ 23.) That litigation resulted in a TRO and a Consent Order among the parties. (Am. Compl. ¶ 29.) Plaintiffs initiated the current litigation in November 2014, alleging breach of the Consent Order and misappropriation of Plaintiffs' trade secrets. The Amended Complaint alleges that Mr. Osae disclosed Plaintiffs' confidential and trade secret information not only to Defendant Scott Bader, Inc., but also to Mr. Osae's current employer, Engineered Bonding Solutions, LLC ("EBS"), a non-party Florida company. (Am. Compl. ¶ 68.)

{3} Plaintiffs filed the Motion to Compel on March 3, 2015, and initial briefing was completed on March 23, 2015. The Motion requests that the Court compel Mr. Osae to produce documents relating to EBS. (Pls.' Renewed Mot. Compel 6.) The Court held a hearing on Plaintiffs' Motion on May 12, 2015, at which Plaintiffs and Mr. Osae were represented by counsel.

{4} On May 13, 2015, the Court entered an Order deferring ruling on the Motion and ordering Plaintiffs to serve Supplemental Responses to Mr. Osae's discovery requests to describe with sufficient particularity Plaintiffs' alleged trade secrets and confidential information that Plaintiffs allege have been misappropriated. The Court further ordered the parties to engage in good faith attempts at resolving Mr. Osae's objections to the sufficiency of Plaintiffs' supplemental identification.

{5} On July 13, 2015, Mr. Osae reported to the Court via e-mail that the parties reached an "agreement that Plaintiffs' trade secret identification ha[d] been sufficiently particularized." (Tiffany Clark E-mail, July 13, 2015.) Mr. Osae therefore withdrew his objection to Plaintiffs' discovery responses based on insufficient trade secret identification. He then raised new objections "over the

appropriate scope of Plaintiffs' discovery requests," in particular arguing that Plaintiffs cannot obtain from him the confidential and trade secret information of his current employer, EBS, located on the company-owned laptop computer EBS has provided to Mr. Osae for use in his work for EBS. (Tiffany Clark E-mail, July 13, 2015.) More specifically, Mr. Osae now contends "that documents, which constitute proprietary trade secret information of [EBS], are not discoverable or compellable from [Mr.] Osae. Rather, [Mr. Osae avers that] such documents must be sought from [EBS] in the current Florida litigation between Plaintiffs and [EBS]."[1] (Tiffany Clark E-mail, July 13, 2015.) Mr. Osae further argues that he should be allowed to view the alleged trade secrets, proprietary information, and confidential information Plaintiffs claim Mr. Osae has misappropriated – all of which Plaintiffs disclosed under an "Attorneys Eyes Only" confidentiality restriction – as such information falls under Paragraph 3(b)(v) of the Consent Protective Order ("CPO") entered in this case. (Tiffany Clark E-mail, July 13, 2015.)

{6}    The Court entered an order to schedule supplemental briefing on Mr. Osae's two most recent objections to Plaintiffs' discovery requests on July 13, 2015. The parties' supplemental briefing was completed on July 31, 2015, and the Motion to Compel is now ripe for review.

---

[1]   In conjunction with its efforts to obtain EBS's proprietary and trade secret information from Mr. Osae, IPS also has sought such items from EBS directly and issued a third-party subpoena *duces tecum* upon EBS in Florida. EBS has resisted the third-party subpoena, and the issue continues to be litigated in the matter styled *IPS Structural Adhesives Holdings, Inc. and IPS Intermediate Holdings Corporation. v. Engineered Bonding Solutions, LLC*, Civil Action No: 05-2013-CA-069331 (Fla. Cir. Ct. 18th Jud. Cir., Brevard Cnty.). Most recently, the Florida Circuit Court ordered EBS to comply with the subpoena so long as IPS grants EBS's outside counsel "attorney's eyes only" access to IPS's trade secret information. (Pls.' Supplemental Disc. Status Report Ex. A.) IPS has also brought suit against EBS for trade secret misappropriation in federal court in Florida. Complaint, *SciGrip, Inc. et al. v. Engineered Bonding Solutions, LLC*, No. 6:15-CV-653-Orl-22KRS (M.D. Fla. Apr. 23, 2015). The federal case is in the very early stages of discovery. (Pls.' Disc. Status Report, pp. 3–4.)

II.

FACTUAL BACKGROUND

{7}     For purposes of this Order and Opinion, the Court recites those facts from the Amended Complaint that are relevant to the Court's legal determinations. The Court, however, does not make any factual findings concerning these allegations in connection with Plaintiffs' Motion.

{8}     Plaintiffs' Motion to Compel arises out of the alleged misappropriation of Plaintiffs' trade secrets by Mr. Osae, who was employed by IPS from July 2000 until August 2008 as the "Application and Development Manager and the only formula chemist employed by the IPS Durham operation at th[at] time." (Am. Compl. ¶ 8.) Mr. Osae terminated his employment with IPS in August 2008. He subsequently began working for Defendant Scott Bader, Inc., (Am. Compl. ¶¶ 16–18), and Plaintiffs contend that Mr. Osae misappropriated their trade secrets in conjunction with Scott Bader, Inc.'s European patent application ("Patent Application").[2] (Am. Compl. ¶ 41.)

{9}     In 2011, Mr. Osae became a 25% owner and managing member of the newly formed EBS. (Am. Compl. ¶ 42–45.) Plaintiffs contend that "EBS is a direct competitor of IPS in the structural adhesives industry," (Am. Compl. ¶ 43), and that Mr. Osae used Plaintiffs' trade secret information to develop products for EBS in violation of his confidentiality agreement with Plaintiffs. (Am. Compl. ¶ 45.)

{10}    Through written and oral discovery, Plaintiffs have sought information regarding EBS's confidential trade secret information from Mr. Osae. (*See, e.g.*, Pls.' Renewed Mot. Compel Exs. A & E.) Mr. Osae has denied his ability to produce EBS's confidential trade secret information – although he admits he has access to such information – because he alleges that he cannot be "required to disclose proprietary trade secret information belonging to [EBS], a non-party foreign corporation who is

---

[2] Plaintiffs allege that during the time it employed Mr. Osae, Scott Bader, Inc. filed an application for a European patent for new adhesive products that utilized certain confidential information of IPS known only to Mr. Osae and other IPS employees who developed products during the period from 2000 to the fall of 2008. Plaintiffs assert that the information disclosed in the Patent Application that was confidential and proprietary includes the identity and combination of chemicals that were unique to IPS's own adhesive products. (Am. Compl. ¶¶ 31–33.)

in direct competition with Plaintiffs in the structural adhesive industry." (Def.'s Mem. Supp. Objections Pls.' Disc. Reqs. 1.)

{11} On February 27, 2015, the parties entered into the CPO, under which certain discovery documents could be designated as "Confidential" or "Highly Confidential—Attorneys Eyes Only". (CPO ¶¶ 1–3.) The Highly Confidential designation restricts access to outside counsel only, subject to some exceptions. (CPO ¶ 3(b).)

{12} On June 29, 2015, Mr. Osae's counsel received Plaintiffs' Supplemental Responses to Mr. Osae's discovery requests, which were prompted by the Court's May 13 Order directing Plaintiffs to describe their trade secrets with sufficient particularity. (Tiffany Clark E-mail, July 13, 2015; Order on Pls.' Renewed Mot. Compel Disc. 3.) Plaintiffs designated their responses, which contain confidential and proprietary trade secret information, as Highly Confidential—Attorneys Eyes Only. Mr. Osae contends that to properly defend this case, he must be able to view Plaintiffs' alleged trade secrets contained in their supplemental discovery responses, notwithstanding the protective order entered in this case. (Def.'s Mem. Supp. Objections Pls.' Disc. Reqs. 8.)

III.

ANALYSIS

{13} North Carolina's liberal discovery rules permit parties to obtain discovery on any relevant, non-privileged matter that appears "'reasonably calculated' to lead to the discovery of admissible evidence." *Analog Devices, Inc. v. Michalski*, 2006 NCBC LEXIS 14, at *22, *40 (N.C. Super. Ct. Nov. 1, 2006) ("Rule 26(b)(1) makes clear that liberal discovery is permitted.") (quoting *Shellhorn v. Brad Ragan, Inc.*, 38 N.C. App. 310, 313, 248 S.E.2d 103, 106 (1978)). However, "[i]t is equally clear under the Rules that North Carolina judges have the power to limit or condition discovery under certain circumstances." *Id.* at *40.

A.    N.C. R. Civ. P. 34

{14} Rule 34 of the North Carolina Rules of Civil Procedure ("Rule 34") permits a party to request that any other party produce documents "within the scope of Rule 26(b) and which are in the possession, custody or control of the party upon whom the

request is served." N.C. R. Civ. P. 34(a). "'[D]ocuments are deemed within the possession, custody or control of a party for purposes of Rule 34 if the party has actual possession, custody or control of the materials or has the legal right to obtain the documents on demand.'" *Lowd v. Reynolds*, 205 N.C. App. 208, 215, 695 S.E.2d 479, 484 (2010) (emphasis omitted) (requiring plaintiff to produce his medical records because he had the legal right to obtain his own medical records pursuant to HIPPA) (quoting *Pugh v. Pugh*, 113 N.C. App. 375, 380–81, 438 S.E.2d 214, 218 (1994)). *See, e.g.*, *Milks v. Mills*, No. COA08-1313, 2009 N.C. App. LEXIS 1234, at *16 (N.C. Ct. App. Aug. 4, 2009) (unpublished) ("Defendant [improperly] failed to produce documents that were being held by his agents, such as the documents that were in the hands of his accountant, insurer, and bank."); *Nat'l Fin. Partners Corp. v. Ray*, 2014 NCBC LEXIS 50, at *49 ("[A] litigating parent corporation has control over documents in the physical possession of its subsidiary corporation where the subsidiary is wholly owned or controlled by the parent.") (quoting *Am. Angus Ass'n v. Sysco Corp.*, 158 F.R.D. 372, 375 (W.D.N.C. 1994)).

{15}  Plaintiffs first claim that Mr. Osae has "actual possession" of the EBS documents because they are located on "*his* laptop computer." (*See* Renewed Mot. Compel 10; Reply Supp. Renewed Mot. Compel 7; Pls.' Br. Regard. Outstand. Disc. Disputes 3) (emphasis added). Mr. Osae's testimony as cited by Plaintiffs, however, indicates that the laptop in question is an EBS-owned computer rather than Mr. Osae's personal computer. (*See* Renewed Mot. Compel Ex. A, pp. 18–19.) Thus, the question before the Court is whether an individual "possesses" for Rule 34 production purposes company documents stored on a company-provided laptop.

{16}  No North Carolina court has ruled on this specific issue. At least one federal court has considered a nearly identical case. *Devon Robotics v. DeViedma*, No. 09-cv-3552, 2010 U.S. Dist. LEXIS 108573 (E.D. Pa. Oct. 7, 2010). In *Devon Robotics*, the court ordered the defendant to produce documents after concluding that the defendant "actually possessed" his non-party employer's documents stored on his laptop computer. *Id.* at *7–8. In reaching its conclusion, the court noted that "'custody and control are broader than possession'" and "[p]resumably . . . cases

involving actual possession are more straightforward." *Id.* at *7 (quoting *Modern Eng'g, Inc. v. Peterson*, No. 07-1055, 2007 U.S. Dist. LEXIS 51131, *6–7 (C.D. Ill. July 16, 2007). Indeed, this premise is consistent with other authorities that physical possession without regard to legal ownership is sufficient under Fed. R. Civ. P. 34. *See In re Bankers Trust Co.*, 61 F.3d 465 (6th Cir. 1995) (holding that Federal Reserve Board's regulations retaining legal ownership of certain documents were not determinative and compelling bank to disclose such documents in its actual possession); 8B Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 2210 (3d ed. 2015) ("A party *may* be required to produce documents and things that it possesses even though they belong to a third person who is not a party to the action.") (emphasis added).

{17}   The present case, however, presents a highly unique scenario distinct from the above cases, none of which dealt with discovery of a non-party competitor's trade secret and confidential information. Here, Plaintiffs seek to discover trade secret and proprietary information of their direct competitor solely through one of its employees. Typically, when a company alleges trade secret violations by an employee who has departed and begun employment with a competitor, the competitor is either joined as a party in the lawsuit or, if the competitor is a non-party, the company seeks discovery of the competitor's documents from the competitor itself through a third-party subpoena under Rule 45. *See, e.g.*, *Boston Sci. Corp. v. Lee*, No. 5:14-mc-80188-BLF-PSG, 2014 U.S. Dist. LEXIS 107584, at *2 (N.D. Cal. Aug. 4, 2014) (seeking production of defendant former employee's work computers through a third-party subpoena of defendant's new employer, plaintiff's direct competitor, in a case alleging trade secret misappropriation); *RCR Enters., LLC v. McCall*, 2014 NCBC LEXIS 69, at *39 (N.C. Super. Ct. Dec. 19, 2014) (seeking non-party competitor's documents through subpoena of non-party competitor when company brought suit solely against former employee); *DSM Dyneema, LLC v. Thagard*, 2014 NCBC LEXIS 51, at *4–5 (N.C. Super. Ct. Oct. 9, 2014) (bringing misappropriation of trade secrets claim against former employee and direct competitor); *Taidoc Tech. Corp. v. OK Biotech*

*Co., Ltd.*, 2014 NCBC LEXIS 49, at \*2 (N.C. Super. Ct. Oct. 9, 2014) (bringing misappropriation of trade secrets claim directly against competitor).

{18} Thus, the Court has concerns about the implications of compelling discovery of EBS's trade secrets on the basis of Mr. Osae's possession of a company laptop. In a workforce where employees have access to a multitude of company documents through any number of portable electronic devices, the traditional line between possession and access has been blurred. *Cf. SCR-Tech LLC v. Evonik Energy Servs., LLC*, 2014 NCBC LEXIS 72, at \*27–28 (N.C. Super. Ct. Dec. 31, 2014) (quoting *Pugh*, 113 N.C. App. at 380, 438 S.E.2d at 218) (distinguishing actual possession from a practical ability to obtain the requested materials).

{19} Further, other factors caution against compelling Mr. Osae to produce EBS's trade secret information, including IPS's active pursuit of such documents from EBS directly in the Florida state court and federal litigation, and EBS's repeated assertion that it is not subject to personal jurisdiction in North Carolina.[3] (Pls. Suppl. Disc. Status Report, Ex. C.) In fact, obtaining confidential trade secret information from a non-party competitor is preferable under Rule 45 because Rule 45 affords greater protections to non-parties. *Bank of Am. Corp. v. SR Int'l Bus. Ins. Co.*, 2006 NCBC LEXIS 17, at \*29 (N.C. Super. Ct. Nov. 1, 2006) (noting the courts' obligation to protect non-parties from burden and expense without sufficient justification). *See also Kilgo v. Wal-Mart Stores, Inc.*, 138 N.C. App. 644, 648, 531 S.E.2d 883, 887 n.5 (2000) ("A subpoena *duces tecum* is appropriate to make discovery of documentary evidence held by a non-party.").

{20} Therefore, the Court declines to compel production of trade secret and proprietary information of a non-party competitor where the plaintiff seeks such information through an employee's possession of a company laptop and the non-party competitor has refused to submit to North Carolina jurisdiction. The Court, however,

---

[3] Indeed, the Florida state court subpoena has already been upheld, even on appeal. Under Judge Turner's order, EBS will be compelled to produce the requested documents once the parties reach some mutual agreement by which EBS's outside counsel gains "attorney's eyes only" access to IPS documents produced in the present case. (Pls. Suppl. Disc. Status Report 1–2).

reserves to Plaintiffs the right to renew their motion in the event that all reasonable efforts to obtain the documents directly from EBS fails.

{21} Plaintiffs next allege that even if Mr. Osae lacks actual possession, he has access to information responsive to Plaintiffs' discovery requests, which he should be compelled to produce in the circumstances present here. (*See, e.g.*, Renewed Mot. Compel 9–11; Reply Supp. Renewed Mot. Compel 7.) Mr. Osae has not denied this allegation but instead argues that he does not have "custody or control," or a "legal right to obtain" the EBS documents that Plaintiffs seek to discover under Rule 34, because, as an agent of EBS, he has no authority to obtain and turn over his principal's trade secret information. (Def.'s Mem. Supp. Objections Pls.' Disc. Reqs. 6–8.)

{22} In response, Plaintiffs contend that under North Carolina law, the principal, *i.e.*, EBS, can be held vicariously liable for the tortious conduct of its agent, *i.e.*, Mr. Osae. Thus, Plaintiffs argue that this agency relationship compels the production of the requested documents because, while Mr. Osae allegedly misappropriated IPS's trade secrets, he was purportedly "targeted for employment by EBS; provided a 25% membership interest in EBS without a capital contribution; is a Member/Manager of EBS; is the Vice President of Technology; is solely responsible for the development of EBS structural adhesive products; is the author of the EBS documents sought; and utilized IPS's trade secret information in the development of EBS's products." (Pls.' Resp. Br. to Def.'s Mem. Regard. Outstand. Disc. Disputes 5.) Accordingly, IPS contends that "discovery regarding the structural adhesive products developed by Defendant Osae, as an agent of EBS, is certainly warranted under North Carolina law." (Pls.' Resp. Br. to Def.'s Mem. Regard. Outstand. Disc. Disputes 5.) Plaintiffs' second argument therefore ultimately focuses on the relevance of the requested information.

{23} The issue here, however, is not the information's relevance; rather, the issue is whether relevant information can be compelled from EBS's agent or whether Plaintiffs must obtain the relevant discovery from EBS directly. Although Mr. Osae may have practical "possession, custody or control" over EBS's trade secret

information, Plaintiffs have not proffered evidence showing that Mr. Osae is EBS's principal or otherwise has actual authority to turn over EBS's confidential trade secret information. While North Carolina law is clear that a principal may be compelled to turn over the principal's documents that are in the "possession, custody or control" of his agents, this Court has found no authority compelling an agent to turn over his principal's confidential trade secret information. *See generally State v. Weaver*, 359 N.C. 246, 258, 607 S.E.2d 599, 606 (2005) ("Two essential elements of an agency relationship are: (1) the authority of the agent to act on behalf of the principal, and (2) the *principal's control over the agent*.") (emphasis added); *SCR-Tech*, 2014 NCBC LEXIS 72, at *27–29 (plaintiff failed to adequately rebut that evidence in its "possession, custody or control" was spoliated, because plaintiff, at some point in time, had the practical ability to obtain and had *de facto* control over the evidence, it belonged to plaintiff, and it could have been accessed by an agent through permission granted by plaintiff).

{24}  Although North Carolina's appellate courts have yet to address this specific issue, the Court finds authority from other jurisdictions persuasive in determining whether a company's confidential trade secret information is discoverable from an employee of the company, when the company is neither joined in the action nor has given its employee permission to disclose its information. *See e.g.*, *Braswell v. United States*, 487 U.S. 99, 109–10 (1988) ("The [U.S. Supreme] Court has consistently recognized that the custodian of corporate or entity records holds those documents in a representative rather than a personal capacity."); *Shcherbakovskiy v. Da Capo Al Fine, Ltd.*, 490 F.3d 130, 139 (2d. Cir. 2007) (holding that chairman and minority shareholder could not be compelled to produce company documents absent a finding that he had undisputed control of the board); *Am. Maplan Corp. v. Heilmayr*, 203 F.R.D. 499, 501 (D. Kan. 2001) (holding that minority shareholder could not be compelled to disclose company documents in a lawsuit against him personally, absent evidence that he was the "alter ego" of the company); *In re Kuntz*, 124 S.W.3d 179, 184 (Tex. 2003) (holding that the employee's "mere access to the relevant [documents] does not constitute physical possession of the documents under the definition of

'possession, custody or control'" because his access to the information was strictly limited to the use of the documents in furtherance of his employer's services); *Moore's Federal Practice* § 34.14 (2)(c) ("When an action is against an officer individually, and not also against the corporation, production may be denied unless there is evidence that the officer is the 'alter ego' of the corporation.").

{25} Plaintiffs correctly assert that Mr. Osae, as a 25% owner and a member-manager of EBS, rises above the level of a mere employee. Plaintiffs have not, however, demonstrated to the Court that Mr. Osae, as a minority owner of EBS, can be compelled to produce confidential or proprietary company documents under North Carolina law on the basis of his minority ownership interest.

{26} Additionally, it appears to the Court that Mr. Osae's 25% ownership interest would not give him an unqualified right to obtain the requested documents from EBS under Florida law.[4] *See* Fla. Stat. § 605.0410(2) (2015); Louis T.M. Conti and Gregory M. Marks, *Florida's New Revised LLC Act, Part II*, Fla. B.J., Nov. 2013, at 50 (describing a member's access rights to documents as limited to those which are material to the member's rights and duties under the operating agreement and preserving the LLC's right to object to unreasonable or improper requests). Nevertheless, the Court notes that Mr. Osae's demand rights may conceivably entitle him to access EBS's requested trade secrets and proprietary information under Florida law under appropriate circumstances, but the record as it stands does not support that conclusion. Should Plaintiffs develop or uncover evidence that Mr. Osae's demand rights entitle him, or other similarly situated EBS owners, to obtain the requested confidential and proprietary information, such facts might argue for a different conclusion.

{27} In summary, Plaintiffs have not pointed to any North Carolina or persuasive authority finding that a person's status as an agent, employee, minority shareholder, or part-owner of a company equates to "possession, custody, or control" of the company's confidential or proprietary documents for purposes of discovery.

---

[4] EBS is organized as a member-managed LLC under Florida law. (Am. Compl. ¶ 42.)

Accordingly, the Court concludes that Mr. Osae is not required to produce EBS's corporate documents in discovery and, thus, that Plaintiffs' Motion to Compel Mr. Osae to produce EBS's documents should be denied.

B.  "Highly Confidential—Attorney's Eyes Only" Documents

{28} The CPO stipulates that the designation "Highly Confidential—Attorney's Eyes Only" shall "be minimally used and an effort will be made to limit its use to information which is proprietary business information relating to recent, present, or planned activities of the designating party and which has been and is being maintained in confidence by the designating party." (CPO ¶ 3(b).) Such documents shall be made available only to the parties' outside counsel of record, with limited exceptions. (CPO ¶ 3(b).)

{29} Under the CPO, documents designated as Highly Confidential—Attorney's Eyes Only *may* be disclosed to certain people other than outside counsel of record provided they meet certain criteria. The current dispute revolves around the following language:

> In addition, such documents may be made available to the following, to the extent it is reasonably necessary to disclose the material to them for purposes of this action; they are not a party to this action or an affiliate of any party to this action or a competitor or [sic] any party to this action; and they are not current or former officers, directors, consultants or employees of any party to this action, or of any affiliate of any party to this action, or of a competitor of any party to this action:
>
> . . . .
>> v)  the author, addressee or any other person identified in the material as a recipient thereof, who would otherwise be entitled to receive and retain such information.
>
> . . . If a person identified in item (v) is not a party or the member, officer, director, or employee of a party, then such person must first sign an agreement . . . agreeing to be bound by this Order.

(CPO ¶ 3(b)).

{30} Mr. Osae argues that he should be given to access to Plaintiffs' Supplemental Responses to Defendant's discovery requests, which his counsel received on June 29, 2015, and which identify the trade secret, confidential, and proprietary information that Plaintiffs allege Mr. Osae misappropriated. Mr. Osae advances this argument

on the grounds that he qualifies under the "author" exception of Paragraph 3(b)(v). Alternatively, he claims that those documents should be re-classified as "Confidential" because their contents relate to *past* trade secrets while the Highly Confidential—Attorney's Eyes Only designation is intended for "recent, present, or planned activities of the designating party." (Def.'s Mem. Supp. Objections Pls.' Disc. Reqs. 8–10.)

{31}  Mr. Osae further contends that the CPO is ambiguous as to whether parties can access Highly Confidential—Attorney's Eyes Only documents under the author exception.  He reads Paragraph 3(b)'s sentence beginning "If a person identified in item (v) is not a party" as contemplating a scenario in which a party may gain access under the author exception to Highly Confidential—Attorney's Eyes Only materials despite the express statements to the contrary in other parts of Paragraph 3(b). Citing the rule that ambiguities in contract language must be construed against the drafter, Mr. Osae urges the Court to resolve this purported ambiguity in his favor. (Def.'s Mem. Supp. Objections Pls.' Disc. Reqs. 10) (quoting *Cosey v. Prudential Ins. Co. of Am.*, 735 F.3d 161, 169 (4th Cir. 2013) (citation omitted)).  Plaintiffs challenge this interpretation of Paragraph 3(b), suggesting instead that there is no ambiguity and that the phrase "if a person identified in item (v) is not a party" simply bolsters the express restriction of Highly Confidential—Attorney's Eyes Only materials to non-parties.  (Pls.' Resp. Br. to Def.'s Mem. Regard. Outstand. Disc. Disputes 8–9.)

{32}  As an initial matter, Mr. Osae has failed to demonstrate that Plaintiffs are the "drafters" of the language in question and thus is entitled to have any ambiguity in the CPO construed against Plaintiffs. *See Novacare Orthotics & Prosthetics E., Inc. v. Speelman*, 137 N.C. App. 471, 476, 528 S.E.2d 918, 921 (2000) (citation omitted) (defining "drafter" as the party responsible for choosing the questionable language).  To the contrary, the parties jointly moved for entry of the CPO and jointly stipulated to the CPO, and neither the motion nor the stipulation indicates a primary drafter.

{33}  Turning then to the CPO language in question, the Court does not find Mr. Osae's suggested contract construction persuasive.  The Highly Confidential—

Attorney's Eyes Only designation gives access only to outside counsel and, when necessary, to certain people falling within one of five permissive categories, so long as those persons are not parties to the action. (CPO ¶ 3(b)). The five permissive categories are (i) paralegals and support personnel employed by outside counsel, (ii) consulting experts and testifying experts engaged by outside counsel, (iii) deposition court reporters and videographers, (iv) the Court and its personnel, and (v) "the author, addressee or any other person identified in the material as a recipient thereof, who would otherwise be entitled to receive and retain such information." (CPO ¶ 3(b)). Under the plain meaning of these provisions, it is certainly likely that a party to the action might fall within item (v). A party to the action, however, would not fall within items (i)–(iv) because those categories identify persons connected to outside counsel or the Court and not to the facts relevant to the underlying dispute. Therefore, the Court concludes that the language in question – "[I]f a person identified in item (v) is not a party . . . [then he must first agree to be bound by this Order]" – merely serves to bolster the prohibition of party access to Highly Confidential—Attorney's Eyes Only materials and does not permit Mr. Osae to take advantage of the author exception since he is a party defendant. In short, the CPO contemplates that "certain areas of proprietary information may require special handling and should not be available even to the parties," (CPO ¶ 3(b)), and the Court concludes that Plaintiffs have properly invoked that protection over their Supplemental Responses here.

{34} Alternatively, Mr. Osae seeks reclassification of Plaintiffs' Supplemental Responses as "Confidential" rather than "Highly Confidential—Attorney's Eyes Only." First, Mr. Osae asserts that Plaintiffs improperly classified the documents under the CPO, which states that the Highly Confidential—Attorney's Eyes Only designation "shall be minimally used" and should be reserved for "proprietary business information relating to recent, present or planned activities" of the designating party. (CPO ¶ 3(b).) The documents should be reclassified, Mr. Osae argues, because they regard Plaintiffs' trade secrets developed in the past and do not relate to Plaintiffs' "recent, present, or planned activities." (Def.'s Mem. Supp. Objections Pls.' Disc. Reqs. 10.)

{35} Under the CPO, the designating party bears the burden of maintaining its challenged designation. (CPO ¶ 4.) Plaintiffs posit here that the trade secrets and proprietary materials designated as Highly Confidential—Attorney's Eyes Only represent their recent and present activities because they are currently manufacturing product lines using those trade secrets that they believe Defendant misappropriated. (Pls.' Resp. Br. to Def.'s Mem. Regard. Outstand. Disc. Disputes 8.) The CPO does not further define or explain the phrase "recent, present, or planned activities," and the Court concludes that, under such broad terms, Plaintiffs have adequately demonstrated that their trade secrets and proprietary material relate to recent or present manufacturing and sales activities. Thus, the Court declines to reclassify the Highly Confidential—Attorney's Eyes Only designation of Plaintiffs' Supplemental Responses on this basis. *See Mainstreet Collection, Inc. v. Kirkland's, Inc.*, 270 F.R.D. 238, 246–47 (E.D.N.C. 2010) (looking to the parties' agreed-upon CPO terms in denying a motion to re-designate).

{36} Next, Defendant claims that much of the Highly Confidential—Attorney's Eyes Only material has already been made public through the European Patent Application of Defendant Scott Bader, Inc., and that Mr. Osae's ability to view those documents is essential to his defense. Plaintiffs argue in opposition, however, that stripping away the Highly Confidential—Attorney's Eyes Only designation on the basis of public disclosure in the Patent Application would be unfair and contrary to public policy in this case where the Patent Application is part of Mr. Osae's alleged misappropriations. (Pls.' Resp. Br. to Def.'s Mem. Regard. Outstand. Disc. Disputes 9; Am. Compl. ¶ 41.)

{37} The Court finds Plaintiffs' contention persuasive based on the current record. Moreover, the Court finds the two non-binding cases Mr. Osae relies upon to advance his argument distinguishable from the instant case. First, in *LendingTree, Inc. v. LowerMyBills, Inc.*, No. 3:05CV153-C, 2006 U.S. Dist. LEXIS 84915 (W.D.N.C. Nov. 20, 2006), the federal magistrate judge removed the confidentiality designation from certain documents that had been publicly disclosed in an earlier trial. Unlike here, however, the *LendingTree* case did not involve the removal of the confidentiality

designation from documents, the misappropriation of which comprised part of the alleged misconduct in the case. Similarly, in *Haemonetics Corp. v. Baxter Healthcare Corp.*, 593 F. Supp. 2d 298 (D. Mass. 2009), the federal district court removed an "outside counsel's eyes only" designation when no good cause for a heightened designation was shown and the heightened designation prohibited access to expert witnesses and others. Unlike the "outside counsel's eyes only" designation in *Haemonetics*, however, here Mr. Osae's ability to defend his case is not unfairly prejudiced by the Highly Confidential—Attorney's Eyes Only designation because the CPO's Highly Confidential—Attorney's Eyes Only designation provides access to consulting and testifying experts and their employees engaged by outside counsel. (CPO ¶ 3(b)(ii).)

{38} Accordingly, the Court is not persuaded that Plaintiffs have improperly invoked the Highly Confidential—Attorney's Eyes Only designation or that the designation should be reclassified to Confidential. The Court thus concludes that Mr. Osae's request to view Plaintiffs' Supplemental Responses to discovery requests should be denied but without prejudice to Mr. Osae's right to renew his request for good cause should new evidence be developed or circumstances materially change.

III.

CONCLUSION

{39} **WHEREFORE**, the Court hereby **DENIES** Plaintiffs' Motion to Compel Discovery Responses from Defendant Samuel B. Osae without prejudice to Plaintiffs' right to renew its Motion for good cause shown, and **DENIES** Mr. Osae's request to view Plaintiffs' Supplemental Responses to discovery requests without prejudice to Mr. Osae's right to renew his request for good cause shown.

    **SO ORDERED**, this the 28th day of September, 2015.


                                    /s/ Louis A. Bledsoe, III
                                    Louis A. Bledsoe, III
                                    Special Superior Court Judge
                                     for Complex Business Cases